JOHN LOGAN,

*vs.*

JOHN MCALLISTER, JR., AND WILLIAM Y. MCALLISTER, TRUSTEES, ET AL.

*New Castle, Sept. T.* 1858.

An express acceptance of an act of incorporation is not essential to the corporate existence, unless required by the act. An acceptance is implied from an organization of the corporators and the exercise of corporate powers.

An act incorporating, without condition, persons already associated in business, having been granted on application, and ascertaining the corporators, vests the franchise immediately, subject only to such acceptance as is shewn by the exercise of the franchise.

An act was passed, upon the application of W. Y., incorporating " W. Y. and his associates," as the Rockland Manufacturing Company on the

Brandywine ; also, appointing directors and providing for their succession. The business had previously been carried on by the firm of W. Y., Son & Co. Soon after the passage of the act the partnership was dissolved, public notice given that the business would thereafter be carried on by the Rockland Manufacturing Company, new books were opened, a corporate seal procured, business conducted in the corporate name, the capital transferred on the books ; and the real estate of W. Y., used in the business, was agreed to be taken at a valuation. After the death of W. Y., without having conveyed the real estate, the same was conveyed by trustees, under the direction of his will, to the Rockland Manufacturing Company as a corporation. *Held,* that the corporate existence was sufficiently established, and that title to the real estate vested in the Rockland Manufacturing Company as a corporation.

BILL IN EQUITY, filed under the circumstances following :

William Young and also William W. Young and Isaac Bannister, prior to the year 1825, were associated as partners, under the firm of William Young, Son & Co., in the business of manufacturing cotton and woolen goods, at Rockland, on the Brandywine Creek, New Castle County —the capital of the firm belonging to William Young. In February, 1825, upon the application of William Young, the Legislature of Delaware passed an act providing, in terms, " that William Young and such other persons as now are or hereafter may be associated with him, for the purpose of carrying on the manufacturing of cotton and woolen goods and machinery, at Rockland, on the Brandywine Creek, in New Castle County, shall be, and hereby are ordained and declared to be, a body politic and corporate, by the name of the Rockland Manufacturing Company on the Brandywine," &c.—the act proceeding to confer the usual corporate powers. The act provided for a capital stock not to exceed $300,000, in shares of $1,000 each, and for a board of five directors, to be chosen by the stockholders annually on the second Tuesday of January, with power to manage the business and concerns of the corporation ; and it directed that until the first annual meeting the directors should be William

23

Young, John McAllister, Senr., John McAllister, Jr., William Wallace Young and Isaac Bannister. There was no provision for an express acceptance of the charter.

It did not appear in the cause that William Young and those associated with him ever accepted in writing the act of incorporation; but that they did in fact, soon after the passage of the act, organize as a corporation, under the name of "the Rockland Manufacturing Company on the Brandywine;" that public notice was given of the dissolution of the firm of William Young, Son & Co., and that the business would be continued by the corporation; that directors were chosen, a common seal procured and adopted, meetings of the directors held, who exercised the powers conferred by the act, filling vacancies in the board from time to time, keeping minutes of its meetings; that books of account were kept and the business contemplated by the charter carried on in the corporate name from December in the year 1825, until the year 1841, when the company suspended business and sold and transferred its personal property to William W. Young and John E. Young, who leased the real estate and continued the business, on their own account, until July, 1846, when they became insolvent.

At the organization of the Rockland Manufacturing Company in 1825, the Company took and thenceforth held possession of the real and personal estate held by the firm of William Young, Son & Co., but which in fact had been the property of William Young. The entire property was taken by the corporation at a valuation of $137,208.03, at which sum the property had been charged to the corporation in the name of the old firm. The title to the real estate was held by William Young, by whom no conveyance was made to the Company during his life-time. He died in May, 1829, leaving a last will and testament, by which, among other things, he devised to William W. Young

and John McAllister, Jr., their heirs and assigns, all his, the testator's estate, " on both sides of the Brandywine, in New Castle County, State of Delaware, tendered to the Rockland Manufacturing Company and agreed to be accepted by them," (being the same real estate held and used by the Company,) and also all the fixtures, machinery, utensils, stock and effects which had been charged against the corporation in the name of the firm of William Young, Son & Co., the said devise being made upon the trust following, viz: " in trust to convey the same, as soon as convenient after my decease, with all my right, title and estate therein, and all the water rights, privileges and appurtenances, unto the said Rockland Manufacturing Company, at their cost, provided they pay therefor to the said William W. Young and John McAllister, Jr., or their lawful representatives as aforesaid, on account of my estate, the sum of $130,000, the excess of said valuation beyond that sum being hereby released to the said Company; but this arrangement is not to affect the accounts between me and said Company, since they went into operation, which are in no manner connected therewith; the said sum of $130,000 to be paid as aforesaid in certificates of shares in the capital stock of said Company, to be paid agreeably to the act of incorporation thereof."

Pursuant to the trusts of the will, William W. Young and John McAllister, Jr., the trustees, on the 29th of June, 1842, conveyed and transferred all the property, real and personal, in the before recited devise mentioned, unto the corporation, the Rockland Manufacturing Company, its successors and assigns, and accepted as the consideration therefor, certificates of stock of the said corporation to the amount of $130,000. The Rockland Manufacturing Company held the property and carried on the business until July, 1846, when it was succeeded in business by William W. Young and John E. Young, as before mentioned.

John Logan, the complainant, became and at the filing

of this bill continued to be the assignee in insolvency of both William W. Young and John E. Young. William W. Young, one of the trustees under William Young's will, had been discharged from the trusteeship by the Orphans Court of Philadelphia, and William Y. McAllister, one of the present defendants appointed a trustee to fill the vacancy. The bill alleged that "neither the said William Young and the persons whom he had in association with him, in the manufacture of cotton and woolen goods and machinery, at Rockland, on the Brandywine, nor the said William Young and the persons whom he thereafter took into association with him in the said business, ever did expressly accept the said act, or ever did, under the said act of incorporation, adopt, have or use, a common seal, or issue or have any certificates of stock, or elect any director or directors, or other officer, or hold any meeting for that purpose, or for the transaction of any other business, as a body corporate, or purchase, receive, hold, transfer, sell or convey, any property, real or personal, in the name of the Rockland Manufacturing Company on the Brandywine, or do any other act, matter or thing, from which their acceptance of the said act of incorporation can be legally and properly inferred; and that neither under the said act of incorporation, nor under any other act of the Legislature of the State of Delaware, did any body corporate or politic, using the name of the Rockland Manufacturing Company on the Brandywine, composed of any persons whatever, exist in the lifetime of the said William Young, or at his death."

The bill charged that, inasmuch as there had been no acceptance of the charter and no corporation known as the Rockland Manufacturing Company on the Brandywine, legally created, the trusts of the will of John Young, deceased, for the conveyance of the property therein described to such corporation had failed; and that the same was held by the trustees for the heirs at law of the testator, being

eight in number, of whom William W. Young and John E. Young were two, being each entitled to one equal eighth part of the property so devised in trust. The bill alleged that the fixtures, machinery, utensils, stock and effects, valued at $79,208.10, had been wholly worn out in use, consumed or destroyed. It prayed that the trustees might be decreed to convey to the complainant, as assignee of William W. Young and John E. Young, and for the benefit of his creditors, the one equal eighth part of the real estate, and to account with him for a like share of the rents, profits and issues thereof, which had accrued since the death of William Young; also, that they should pay to him the equal eighth part of what was the value of the fixtures, machinery, utensils, stock and effects at the death of William Young, with interest thereon.

The answers of the defendants insisted that an express acceptance in writing of the charter, not being required by its terms, was not requisite for vesting the corporate franchise in William Young and his associates, but that they were by the charter itself invested with corporate capacity and powers *in præsenti* and unconditionally; that they did in fact organize under the charter; and the answers set forth in detail the organization and corporate acts and transactions of the corporation, as they are above recited; and the answers, therefore, insisted that the conveyance of the real estate in controversy, and the assignment of the fixtures, machinery, utensils, stock and effects by the trustees, under the will of William Young, deceased, to the Rockland Manufacturing Company, as a corporation, were valid and effectual, and that no title to said estate passed to the heirs at law of the said William Young, deceased, and to the said William W. Young and John E. Young, as two of such heirs at law, according to the case made by the bill.

The answers further set forth several other equitable de-

fences against the prayer of the bill; but these, although much relied on by the defendants, and fully argued on both sides, did not enter into the consideration of the Chancellor and need not be here stated.

A large body of evidence was taken on both sides, which so far as it is material, is sufficiently set forth in the opinion of the Chancellor.

The cause came before the Chancellor at the September Term, 1858, for a hearing upon the bill, answers, exhibits and depositions. The argument embraced many questions arising out of the case as made by the bill and answers; but it is deemed necessary to report only so much of it as relates to the question on which the case finally turned, viz: —whether the Rockland Manufacturing Company on the Brandywine ever had a corporate existence.

*G. B. Rodney* and *W. H. Rogers*, for the complainant.

The main question is, whether the charter of the Rockland Manufacturing Company was ever so accepted as to make it a corporation previous to William Young's death in 1829. We do not insist that a formal acceptance in writing is necessary. The acceptance may be by *acts*, but it must be by corporate acts—by acts of the body incorporated. *Ang. & Ames on Corp.* 78; *sec.* 83. And these acts must be direct and unequivocal, consistent with no other hypothesis but that of corporate existence. The acts relied on in this case are not of that character. The fact that the charter was one applied for is of no effect: for the application was made by William Young alone, not by those who were to become corporators. It was for them, and not for him alone, to accept. Other acts following the grant of the charter, such as the procuring of a seal, &c., were also by William Young alone, and were acts preparatory or tending to perfect the incorporation, but were not alone

effectual. There is no evidence of the use of the seal until 1842. The procuring of it is evidence only of an *intention* to organize. There is no sufficient proof of an organization by stockholders, of the election and meetings of directors, of the creation of a capital stock, of the adoption of by-laws, &c. It is proved that the old firm gave notice of its dissolution, and assumed the name of the Rockland Manufacturing Company ; that in this name it kept its accounts, gave orders and transacted its business ; but all this shews only a change of partnership name and not an incorporation. Except in name, the business, during William Young's lifetime, was conducted precisely as before the charter was granted. After Young's death no organization could be effected. The grant was *to him and his associates.* By his death an integral part of the contemplated corporation was lost. *Rex vs. Passmore,* 3 *T. R.* 97. Aside from this incapacity to organize, resulting from the death of William Young, the non-user of the corporate powers for so many years prior to the execution of the deed from the trustees, under his will, was evidence of a surrender, and incapacitated the Company from taking under the deed as a corporation. 19 *Johns R.* 456. The result of the case is, that at the date of the deed from the trustees under William Young's will there was no corporation capable of taking under it, and that the trustees still hold the property in controversy for his heirs at law, among whom were William W. Young and John E. Young, to whose shares the complainant is entitled, as their assignee under the insolvent law.

*J. A. Bayard* and *D. M. Bates,* for the defendants.

The allegation of the bill that at the date of the conveyance of the property in controversy to the Rockland Manufacturing Company, no such corporation existed, is vital to the complainant's claim. What then is essential to a

corporate existence? Two things only, viz: corporators and a franchise vested. Under the-grant of a charter the franchise is vested when the corporators are ascertained. Usually, certain acts are to be done by the corporators, in order to ascertain in whom the franchise is to vest, and the company does not exist until those acts are performed; but where the charter itself ascertains in whom the franchise is to vest, the Company exists as a corporation from the date of the charter. In such case no acceptance is necessary, other than, what is inferred from the application made for the charter, from its beneficial character and from the use of it.

In this case, the charter ascertained the corporators, describing them as " William Young and his associates," the associates being William W. Young and Isaac Bannister. It not only ascertained the corporators, but supplied an immediate organization, by naming directors and providing for their succession. Nothing then was wanting but for the corporators to exercise the franchise vested in them, which they proceeded to do; and this, especially connected with the prior application for it and its beneficial character, was an acceptance. 10 *Wend. R.* 266; *Angell & Ames on Corp.* 69; 12 *Wheat. R.* 71; 11 *Maine R.* 227; 16 *Ib.* 224.

With respect to the acts of William Young and his associates, relied on by us as shewing an acceptance, they are of great number, being such as would not have been lawful but for the charter, and therefore are conclusive of the intent to act under it. The old Company was dissolved, public notice given that thereafter the business would be conducted by the Rockland Manufacturing Company, *as a corporation*, officers were elected, a seal procured, new books opened, the capital of William Young transferred on the books and an equitable title to the real estate made by contract, to be executed by deed, after survey. Certificates of

stock were not issued ; but these are only evidence of title to stock and are not essential to the corporate existence. Meetings of directors and stockholders were seldom held, because of the limited number of corporators, requiring less formality of action. But through William Young's lifetime, and long after, the business was extensively and wholly conducted in the corporate name. It is proved also that the complainant for a number of years dealt with the corporation, was employed by it, was a witness in suits against it, and himself sued the Company as a corporation.

Further, a supplement to the charter, passed in 1847, affords a clear legislative recognition of the prior existence of this corporation; and this is conclusive, because the question of corporate existence is one between the corporators and the State. 1 *Humph. Tenn. Rep.* 339.

The corporate existence,once established, must be taken to have continued until terminated either by limitation, by repeal, by forfeiture judicially determined,by surrender or by loss of the power of succession, none of which modes of dissolution is alleged or proved. A mere temporary non-user of corporate powers is no evidence of a surrender of the franchise. *See Ang. & Ames on Corp.* 740, where the case cited from 19 *Johns R.* 456, is explained.

HARRINGTON, CHANCELLOR.—On the principal question raised in the case, I am of opinion that the Rockland Manufacturing Company, on the Brandywine River, had a legal existence, under the charter of February 8, 1825, and the supplement of January 5,1847, by legislative grant, acceptance and action, so far as action under the grant was necessary and proper for the objects of the incorporation, and under the circumstances surrounding the parties in interest. This acceptance of the charter, and action under it, were of such public notoriety as to sustain the legal

character of this Company as a corporation and give it force, not only amongst the corporators and those interested in the Company, but with the public. The act was applied for, as it appears from the exhibits and from the public journals of the legislature, by William Young, then the proprietor of a large manufacturing establishment on the Brandywine. It incorporates the said William Young, and such others as were or might be associated with him for the purpose of carrying on the business of manufacturing woolen and cotton goods, and machinery, at Rockland on the Brandywine; and it appoints, as directors of the Company then incorporated, until the first annual meeting, and until others should be appointed and should act, William Young, William Wallace Young, John McAllister, Sr., John McAllister, Jr., and Isaac Bannister.

What remained to make this an existing corporation ? The assent of the person or persons incorporated, their acceptance and concurrence must doubtless exist. The Legislature cannot confer a corporate existence on a heretofore dead body, which will not receive such vitality; but the fact of seeking such corporate existence, as well as the subsequent exercise of corporate powers, is evidence of an acceptance of the legislative grant. Proof of both of these exist in this case, satisfactory in itself, though not very full; as the circumstances surrounding this corporation did not often require a very formal exercise of powers in the usual manner of corporate action. Being the change of a partnership into a company, acting in a new capacity but much through the same agents, the proof of this character would not be so easy and obvious, as in the establishment of a new business, whether as a partnership or a corporation. The grant of corporate powers was applied for by William Young : it was made, and it was competent to the legislature to make it, to William Young, with or without associates. Persons were named in it to represent and carry on the corporation until others should be

chosen; and the corporate franchise was thus vested, inasmuch as the persons in whom it should vest were thus lawfully ascertained. These preliminaries, sufficient in themselves to establish a corporate existence, were followed by public notice, organization, the election of a president and other officers, a formal transfer of the capital of William Young to the Company, and an agreement to convey the real estate which was to form a part of the corporate property. This conveyance was directed by the will of William Young to be made, according to the intent and to carry out the objects of the incorporation; and it was made, accordingly, by the executors and trustees on the 29th of June, 1842.

The case made by the bill and answer, as agreed in the arguments, presents this as a preliminary question of vital importance to the cause, and the decision of which, on the opinion which has been already expressed as to proof of the legal existence of the Rockland Manufacturing Company, covers the whole case. It is not important, therefore, nor proper, that I should express any opinion as to the several other points raised by the defendants in this cause, considering as I do that the securities and deeds under which the defendants hold the property through that Company are valid, and that the claim of the complainant, as the assignee of William W. Young and John Evans Young, is invalid. The bill is, therefore, dismissed with costs.